Good morning, your honors. Dato Shingen of Leland-Perechini on behalf of the appellant G.E. May it please the court. This appeal presents a case where the Pele-Calwestern construed the subject statute, Civil Code, California 2924-J, differently at the time that it was handling the surplus funds than the point in time where it actually resulted in a lawsuit. As we know, Calwestern maintains that 2924-J-A4-C in effect constitutes a 30-day statute of limitations. But if we look at the record, which for this purpose of this appeal is pretty much undisputed, they treated that entirely differently. They did not act consistent with that position that they've taken during the course of litigation. Well, can I ask you just sort of a sequencing problem with the statute? If I understand it correctly, Calwestern gave notice to the party that it should have given notice to of the judicial foreclosure, and everybody, including G.E., which wasn't G.E. Capital, which wasn't on that address list, knew about it. Then it gives notice to the proper party of the surplus, and that's not appealed, so far as I understand it. I'm not sure what you mean by appealed. Well, I mean, we're not at we're not at there's no citation of error with respect to the fact that proper notice was given of the surplus. No. That's correct. All right. So now what happens next is that nobody in behalf of G.E. Capital, that is PLA, negligently or not, doesn't return a claim within or doesn't submit a claim within 30 days or, indeed, within a whole bunch of days. Two people do, Maldonado's and the IRS. And G.E. Capital says, okay, I'm going to resolve the written claims, which I've got. Calwestern. Calwestern. I'm going to resolve the written claims that I have. And there's a little squabble between the IRS and Maldonado about how much is owed to whom. And then they get a very late claim, or they just get a claim. Let's leave out the statute of limitations or lateness issue altogether. Before distribution occurs to the IRS and Maldonado and itself, they are aware that at that point they say, ah, we'll interplead. But they don't. Okay. So they should have, let's say, on your take, they should have within the 90-plus 10-day period. But they don't. So while they're sitting on the claim, the IRS wakes up and levies on the funds. Now, have I got the sequence essentially right? I believe so, Your Honor. Essentially. Okay. Now, here's my question with all that. Since we don't have a notice question, I'm not so sure about what the statute of limitations issue, that is, the timeliness of the claim, isn't a red herring. Because once you get to the point where the distribution or interpleader should have occurred but didn't, the IRS levies and the levy immunizes G.E. Western from any liability to any third party. It has to fork over the funds. Now, maybe the IRS would have woken up earlier. It didn't. Whatever. It didn't. It woke up when it woke up. So what's wrong with that train of logic? If I may explain, the problem with that is that, as you've explained, there was the initial 30-day period within which there's a written claim is required to be submitted. Then there's a 90-day period where the trustee has an obligation of due diligence to resolve competing claims and, as the statute itself explains, other evidence of conflict. And within that 90 days, the trustee has the obligation and the duty to resolve those priorities pursuant to Civil Code 2924K. If it doesn't, I mean, suppose it just plain flat-out messes up altogether. Suppose that. Yes. That it just messes up and every possible obligation that could possibly be imposed on it, it just messes up. That's a breach. But the IRS, okay, fine. So what? That's what I'm focusing on. Yes. So what? If it completely messes up, the IRS says, it's mine. And under the statute, the IRS, and I'm not talking about supervening causes or any of that stuff. I'm just saying the IRS clamps down the claw. The claw, the lien is the claw, and the IRS grabs it. And that then puts your remedy for mess-ups and everything else into a different forum, which is to litigate it against the IRS. Now, you're senior, which I understand. And I don't know what happens in the litigation with the IRS, whether your seniority trumps or not. But why isn't that the way it goes down? Once you get away from initial negligence, once notice has properly been given, why isn't all the rest of it immunized? The problem becomes that once CalWestern, within those 90 days, fails to act as it should, then it has breached a duty that it owes to GE Capital and, of course, to any other potential claimants to the surplus funds. Once that breach takes place, there's already damages. Same so in an essence, a cause of action for negligence or statutory violation accrued on April 22nd, 1999, the end of the 90-day period. Well, let me follow up on Judge Reiner's question. There's no damages until they actually move, until your client loses the chance of the money. Just negligence in the air, negligence around harm is nothing. It's only when the IRS takes the money that you may be harmed. Right? I would respectfully disagree. There is no harm to you until the money is taken. Isn't that true? I would respectfully disagree. I would submit that there is a harm when, at that point in time when there is a breach and when GE, when it is entitled to receive the funds and when it hasn't, there is damage at that point. The fact that the damage may be continuing so long is. We don't know whether they were entitled to have it or not. All they would be entitled to do is some kind of action that they might or might not have gotten it in. Same thing 10 days later when the funds must have been interpled under Section 2924J. Once again, at that point in time, had CalWestern performed as it was required to do under the statute, GE would have had certain rights, very important rights, and that would have been to have its day in court. Let me ask you something. It was deprived of that, and there are certain monetary damages that flow from that breach. That's the essence of the argument as to why the IRS levy that comes in, you know, a month later is irrelevant. Let's assume that, you know, that GE had filed a suit, you know, the day after the 90th or the 10th day had expired, but CalWestern still retains the surplus funds and doesn't deposit with the court. If the IRS comes in and levies on it, why would it be the case that GE should not be able to still pursue its claim for negligence and statutory violation and to get monetary damages in the amount of? Monetary damages in that case. Because if you're senior and you prevail against the IRS, what are your damages, attorney's fees or what? I mean ---- Well, I was mentioning a lawsuit against CalWestern. I know. But what are your damages against CalWestern? The damages would be the amount of your lien. But I mean, assuming if you're senior in your litigation with the IRS, you're going to prevail, aren't you, unless the IRS successfully interposes the defense that your claim was untimely, in which case you've lost anyway because your claim was untimely. Or some other defense, kind of a defense where they're raised by way of motion to dismiss in this action. IRS was a defendant in this case. Well, yes, but they ---- but that was before the levy. So you're under a different provision now. They could, in fact, I suppose, have properly raised sovereign immunity. They did. Which they did. But they can't do that in a levy situation. Well, why didn't you sue the IRS? I wish that I could offer an explanation. Excuse me. The IRS was sued. Correction. No, but under 740 ---- under 26 U.S.C. 7426, you had a right to sue the IRS if they had made a wrongful levy on your property. And they were part of this initial lawsuit. Did you invoke that statute? I don't recall. I don't think you did. But ---- Why didn't you follow the proper statute to sue the IRS is the question. Of course, there hadn't been a levy at that point. But why didn't you pursue them? That's the question. I was ---- I'm afraid I was not counsel, trial counsel. Well, how can there be a loss when you had a perfectly good remedy still available? Sovereign immunity is not a defense to the statute. It specifically permits the third party to sue. But that's ---- I would respectfully submit that that's not before us right now. The fact that there ---- Perhaps. I would ---- that particular issue, I would say, is ---- Well, the question, if you haven't suffered any loss, you have a good remedy, you have a ---- you said you did have a remedy. You have a remedy. Why ---- where's the loss? But in that situation, you may simply have a situation where you have remedies against two different parties, as was sought in this case. It doesn't necessarily mean that the exclusive remedy would be against the IRS when you have a breach by catalogs. Your position is they took away your chance to get this from the IRS, but they didn't take it away. You have a statutory remedy. That would be one theory, that it was that they allowed the IRS to come in and to levy. You were even in a lawsuit where you could have amended your complaint to state that. Were you in that lawsuit, you personally? Not in the underlying suit. I was not. I've only come in on the appeal. But if I would, again, respectfully submit that the question isn't necessarily whether there was a remedy against the IRS. That may be the case. And honestly, I can't say one way or the other whether there was not. Certainly there was a dismissal in this case in favor of the IRS. But nevertheless, that does not foreclose an action against CalWestern. I'm not aware of any authority that says that there isn't some type of joint and several liability between these two multiple defendants. There isn't any authority that I'm aware of that says you had to pick a remedy against the IRS. And even though CalWestern caused you harm and breached its duty to you, you first had to in some ways exhaust a remedy against the IRS before proceeding against CalWestern. No, but the precise question is, what is the harm to you if all you lost was a chance of a remedy against the IRS? You still have a remedy against the IRS. What you've lost is the amount of your lien, which in this case was not free. No. All you had to begin with was a chance. You didn't have the certainty of winning against them. I don't know whether you would have won or not. I still don't know. On this record, I would respectfully submit that it's undisputed that GE's lien predated and had priority over that of the IRS. Then you would have won on the 7426 suit. Again, Your Honor, I would get back, and my position would be that that's simply one avenue of remedy. That does not absolve CalWestern of its breach of duties and the damages that it caused. At that point, I would respectfully submit that GE has a choice of remedies. It can proceed against both defendants, or it can proceed against one or the other. But the fact that it did not proceed against the IRS does not foreclose a claim of negligence and statutory violation against CalWestern, which is clear and evident and which caused damages. It may be the case that there may not be a double remedy, but that's a different issue. Nevertheless, the point here is that CalWestern clearly had a violation, a statutory violation, and it did cause damage. And it did place GE in a different position with respect to its rights and remedies, and it did cause harm, and it did prevent GE from, number one, from collecting the surplus funds based on its priority, number two, from even having its day in court by way of interpleader. It seems incongruous to me that CalWestern has all these duties imposed by statute, but then never has any consequence for it. And it also provides almost a perverse incentive for the trustee to simply, in situations like these, to refuse to interplead funds. And whenever the IRS has a lien, to just wait for the IRS to come in and sweep the funds away and then claim immunity. That simply cannot be the case. I can't imagine that the statute would allow the trustees to basically choose that course of action and to absolve itself of any liability. I would like to reserve, unless there are any questions, some time for rebuttal. Kagan. Good morning. Good morning, counsel. May it please the Court. Peter Salmon on behalf of CalWestern Reconveyance Corporation. And the questions that Justice Reimer and Justice Noonan posed are really the ones that go to the heart of one of the defenses recognized by the district court in ruling on summary judgment. Let me flip the inquiry a little bit. At least by analogy to life insurance practice or law in California, it could be argued that the timeliness of submitting a claim doesn't really matter so long as the person with the obligation to distribute knows about the existence of the claim before the distribution takes place. Now, there's no law we know in California on this particular statute that's precedential. There's some suggestion in the case law that's not precedential, that the timeliness issue is one of substantial compliance, which, of course, wouldn't be true here. There was no substantial compliance. I mean, there's no compliance, period. But nevertheless, they know about it. CalWestern knows about the claim before it has distributed any funds or taken any action to distribute funds. Then it says, oh, well, now I see there's going to be a fight. So I want out of this, and I want to make sure I don't have any liability for making a wrong guess. So I'm going to interplead the funds, which is available to it, only it doesn't do that. It doesn't do it and doesn't do it and doesn't do it, and then the IRS wakes up. So if I understand the structure of the statute correctly, and there's a Federal District Court decision published that says this is sort of the way to interpret it, if there had been an interpleader, then all bets are off. Any claims are submitted. So they could have just submitted their claim fresh without a timeliness defense, as it were, which would plainly be senior to the IRS. So if CalWestern had done what it was supposed to do when it was supposed to do it, the argument would go, it necessarily follows that the seniority rights were wiped out, or at least deferred through a whole other series of litigation. Now, that's a long-winded question, but I wanted to get it all out so you can tell me where that goes astray in your view. Well, two issues, Your Honor. Number one, and don't assert it lightly, but this is a new theory on appeal that is asserted by new counsel for GE Capital Mortgage. From an original complaint filed in December of 1999 to an order of summary judgment in December of 2003, it was never asserted as a basis for negligence that the failure to interplead or deposit within the outside number of days to do it, according to 2924J of the California Civil Code, constituted negligence. Even if you go past that argument, we're still dealing with the common law elements of negligence and the damages that GE Capital Mortgage says are approximately caused by CalWestern's failure to deposit or interplead those funds within that outside statutory maximum period. And as Justice Noonan pointed out, what the failed theory that GE Capital Mortgage never asserted, despite an original complaint and four amended complaints, did wind up dismissing the IRS at an earlier stage before it got to the fourth amended complaint, but it never asserted 26 U.S.C. 7426, which provides a remedy for parties other than the taxpayer who claim an interest in the funds that are levied by the IRS. And where the theory falls apart for GE Capital Mortgage and where they even, if this had been presented to the district court, where they failed to establish a disputed issue of material fact for purposes of summary judgment, is how CalWestern's alleged failure to deposit or interplead timely rendered them unable to assert that claim. In fact, they said that you could have, I have no idea what happens when you sue the IRS. I don't know. I don't know whether all bets are off then, too. I don't know. Do you? I mean, are all bets off so that there's no defense? I mean, it's a fight, a seniority fight? Yes, Your Honor. Under the 26 U.S.C. 7426 gives the procedure for a claimant such as GE Capital Mortgage to assert its priority to funds that have been levied by the IRS. Now, as raised in summary judgment by CalWestern, the party who receives the levy from the IRS, and based upon decisions out of district courts and in the Ninth Circuit, there are only two defenses to the levy, the party who receives it doesn't have the funds. But you've got to get to the levy first. And the frame that I was on is suggesting that the failure to interplead at the time when the statute says you should directly affected GE Capital's status as a senior leonore. Because if it had been interpled at the time it was supposed to have been, there was no levy. So the fight would have simply been between the IRS, which was junior to GE Capital's, and it would have been resolved right then and there very cleanly in GE Capital's favor. Mr. Your Honor, we're dealing with the period the IRS levy was actually June 7th of 1999, or actually the notice of levy received by CalWestern. Which is a couple of months or at least a month and a half later than the interpleader statute would have required interpleading. It was roughly 30 to 35 days later than the outside period for CalWestern to interplead the funds. However, and even if this theory had been presented in the district court, the same defense applied that the 6332 of the Internal Revenue Code had CalWestern's limited responses to the levy. And nothing that CalWestern did by turning over the funds pursuant to the levy precluded GE Capital mortgage from asserting Internal Revenue Code section 7426. Let me ask this. I don't know what else it can say. But clearly it would have gotten its entire claim if there had been a timely interpleader. That portion, Your Honor, I do not know. If the interpleader had come, the IRS could have asserted the same defense. It doesn't have a defense anymore.  Oh, no, I'm sorry, Your Honor. Not the levy, but the IRS could have asserted. Of course, if the lien was junior. Yes, Your Honor, the IRS still would have had the same defense that GE Capital is asserting here. It doesn't apply a 30-day period in which to file a claim. I don't understand that to be the case. And the interpleader statute starts the claim-making process all over again. And Judge Coyle read it the same way, doesn't it? I mean, it says on its face it starts it all over again, and nothing else in the section applies. So once you've interpled, all bets are off, and it's just two new claims. It's whoever's got a claim pops the claim in. Right? Yes, Your Honor. Then it's the superior court that makes the evaluation at that point. Right. But it is still the issue that nothing – it comes down to the proximate cause issue, whether it's proximate cause or strategic. And so your position is there's absolutely nothing left over. So there's no reason to hold – put any of this lawsuit on ice to see whether it can all get recovered back from the IRS. Is it too late to file the IRS, by the way, to pursue the IRS? GE Capital, I don't know the limitations period on the Internal Revenue Code section 7426 challenge to the levy that GE Capital could have brought. The fact is GE Capital sued the IRS in their original complaint, in their amended complaints, and ultimately dismissed them due to sovereign immunity, but because they had brought causes of action only for negligence, violation of statute, unjust enrichment money had received, and conversion. They failed on those bases. The United States had a proper and full defense of sovereign immunity. Well, there's no question, but I'm asking whether there's any limitations period on the – under the levy statute. Your Honor, I'm not familiar with the limitations period under it. I do believe that it likely would have passed by now and may have been also barred by the failure to raise it in the underlying lawsuit against the IRS and stipulating to their dismissal may be something that's barred now by GE. Were they dismissed after the levy was executed, after payment was made on the levy? Yes, Your Honor. The payment on the levy was made sometime shortly after June 7th of 1999. The original complaint filed by GE Capital wasn't until December 27th of 1999. So the money had already been paid pursuant to the levy at least six months prior to the original complaint by GE Capital against the IRS and CalWestern and the other parties. So the – it still comes down to the issue that despite – even if the theory had been raised in the trial court that the failure to interplead or to pause within that time frame, it's that the proximate causation is not there and no disputed issue of material fact could be found that CalWestern somehow rendered GE unable to pursue its remedies under 7426. The two causes of action that are on appeal as indicated in the reply brief by GE Capital Mortgage, although there were five causes of action on which summary judgment was granted, the two appealed were negligence and a violation of statute cause of action for violation of 2924J of the California Civil Code. And as pointed out in summary judgment, none opposed, and as raised by CalWestern on appeal and not addressed, there is no cause of action for violation of statute unless the statute specifically provides for that remedy. And as said, the Vico Insurance case, and in this case 2924J, did not provide a right of action simply based upon the violation of statute. So on that ground, there is no basis to overturn the district court's ruling. So it's really just the negligence cause of action that's at issue before the court. So unless there are any questions, I will conclude here. Thank you, Your Honor. Thank you, Your Honor. Mr. Simeon. Thank you, Your Honor. I think the issue of the damages, and we've talked about what damages arose as a result of CalWestern's breach of duty. Certainly I mentioned the lien. That would be the largest amount. But as we see, there were consequences that came about as a result of CalWestern's multiple breaches, not only its failure to prioritize, but also its failure to interplead. And we're here today, five, six years later, as a result of what could have easily been resolved at the time, had CalWestern simply did what it intended to do when it recognized on March 22nd, only four days after having received GE's, call it untimely, call it whatever you will, but it was a written claim. Well, what damages could possibly flow from it? The fact that now you have to embroil yourself in a lawsuit with the IRS and others as a result of your failure to disperse the funds based on the priorities set forth in the statute, 2924K. The fact that you have to wait five or six years, as the case has been, in order to collect the damages that flowed by virtue of simply that negligence that took place by CalWestern. Those are other items of damages that have monetary value to them that would be recovered. And with respect to the two claims, I believe the negligence claim and the statutory violation, I think they are related. I think there's no question that by virtue of the statute, there is a liability that can be imposed against the trustee, whether it's negligence or defined or named as a violation of statute. I'm not sure that it makes much of a difference, but there is liability and damages that flow from that. And do you have any other questions that I can address? I don't think so. Thank you. I appreciate the argument. The matter just argued will be submitted and the Court will be recessed for the day.
judges: Noonan, Rymer, Gould